PARRO, J.
12Panny Beck, a classified civil service employee of the City of Baker Police Department (the Department), appeals a judgment of the district court, which affirmed the decision of the Baker Municipal Fire and Police Civil Service Board (the Board) to uphold his demotion from the rank of Captain to Probationary Patrolman First Class. After reviewing the facts and applicable law, we convert the appeal to an application for a supervisory writ, deny the writ in part, grant the writ in part, and remand the case to the district court for further proceedings in accordance with this judgment.[1]
FACTUAL AND PROCEDURAL BACKGROUND
Beck has been an employee of the Department for over thirty years and held *890 the rank of Captain. In November 2007, Chief of Police Michael Knaps received a “Proclamation of No Confidence” signed by seventeen police officers who alleged various problems concerning Beck’s leadership of the uniform patrol division. After receiving this petition and written statements from a number of the officers, Chief Knaps put Beck on paid administrative leave and conducted an internal administrative review of his job performance. On December 4, 2007, following this investigation and a Loudermill hearing with Beck,[2] Chief Knaps wrote Beck a letter, informing him of the decision to demote him to the position of Probationary Patrolman First Class, based on violations of two general orders of the Department’s policies and procedures. The letter stated the demotion was effective December 10, 2007, that Beck would remain on administrative leave with pay through Friday, December 7, 2007, and that he was to | ^report to duty as a Probationary Patrolman First Class on December 12, 2007. Beck appealed the demotion to the Board, pursuant to LSA-R.S. 33:2501(A).[3] On February 21, 2008, the Board conducted a full evidentiary hearing at which over twenty witnesses, including Beck, testified, and numerous exhibits were reviewed. Following this hearing, the Board voted unanimously to uphold the demotion, finding the decision was made in good faith and for just cause.
The Board determined that Beck had violated General Order 105, which states, in pertinent part: ,
Sick leave may not be used for absences incurred because of attendance to personal affairs.
* * *
The employee that is sick shall not leave his or her residence during his or her scheduled tour of duty except for the following reasons:
• For a visit to the doctor
• To obtain medication
• To go to and from the hospital or other facilities of health care providers.
The Board found that during the time he was on extended sick leave from the Department, Beck had gone on vacation in Tennessee and had made a trip to buy a motorcycle in Alexandria, Louisiana.
The Board also found that Beck had violated General Order 107, which includes the following in its descriptions of prohibited personal conduct and required behavior:
• Officers shall not solicit free admissions, meals, or transportation, nor *891 any other favors not generally offered to private citizens.
[[Image here]]
• Superior officers shall treat those of lesser rank with the respect and response due them as fellow officers.
The Board found Beck had directed subordinate officers to a specific repair shop to repair their City vehicles and instructed them to buy the mechanic lunch from their personal funds in return for his services. The Board further found that he had shown | ¿disrespect to an officer of lesser rank by interfering with the military reserve duties of that officer by contacting the officer’s military superior regarding the officer’s need to attend military drills.
Beck appealed the Board’s decision to the Nineteenth Judicial District Court under the authority of LSA-R.S. 33:2501(E)(1).[4] After considering the record of the evidentiary hearing, the district court reversed the Board’s decisions regarding the solicitation of favors issue and the vacation trip to Tennessee, finding that those decisions were made without just cause, because Beck had not solicited any favors for himself and his superior had authorized the Tennessee trip. However, the court found there was just cause and upheld the Board’s decisions as to the travel to Alexandria while on sick leave for the purpose of picking up a motorcycle and the contact with a patrolman’s military superior without his knowledge or consent in order to have him excused from military drills. The court found that Beck had been given sufficient notice and opportunity to be heard and that the disciplinary action taken was in good faith and for cause. Therefore, it affirmed the Board’s decision to demote Beck to Probationary Patrolman First Class.
Beck timely filed a devolutive appeal to this court, which we have converted to an application for a supervisory writ. Beck urges this court to overturn the judgment of the district court, for the following assigned errors: (1) finding that Beck had sufficient written notice from the city to satisfy the requirements of Article X, Section 8(A) of the Louisiana Constitution and LSA-R.S. 33:2500(D); (2) finding just cause for the Board’s finding that Beck violated General Order 105 by traveling to Alexandria while on sick leave; (3) finding just cause for the Board’s finding that Beck violated General Order 107 by attempting to have a subordinate excused from military drill without the subordinate’s knowledge or consent; and (4) affirming the degree of discipline imposed by the appointing authority after the court itself reversed the Board on fifty percent of | Bits factual findings that supported the disciplinary action.
APPLICABLE LAW
The grounds for which the appointing authority may remove or discipline a tenured employee are set out in LSA-R.S. 33:2500. The pertinent parts of that statute provide that the following constitute “cause” for termination or other disciplinary action:
A. The tenure of persons who have been regularly and permanently inducted into positions of the classified service shall be during good behavior. However, the appointing authority may remove *892 any employee from the service, or take such disciplinary action as the circumstances warrant in the manner provided below for any one of the following reasons:
(1) Unwillingness or failure to perform the duties of his position in a satisfactory manner.
⅜ * ⅜
(5) Conduct of a discourteous or wantonly offensive nature toward the public, any municipal officer or employee; and, any dishonest, disgraceful, or immoral conduct.
⅜ * *
(14) The willful violation of any provision of this Part or of any rule, regulation, or order hereunder.
(15) Any other act or failure to act which the board deems sufficient to show the offender to be an unsuitable or unfit person to be employed in the respective service.
B. Unless the cause or condition justifies an employee being permanently removed from the service, disciplinary action may extend to suspension without pay for a period not exceeding the aggregate of ninety days in any period of twelve consecutive months, reduction in pay to the rate prevailing for the next lower class, reduction or demotion to a position of any lower class and to the rate of pay prevailing therefor, or such other less drastic action that may be appropriate under the circumstances.
The imposition of disciplinary action against a police officer does not occur in “good faith” if the appointing authority acted arbitrarily, capriciously, or as the result of prejudice or political expediency. “Arbitrary or capricious” means the lack of a rational basis for the action taken. The appointing authority must prove its case by a preponderance of the evidence. Shields v. City of Shreveport, 579 So.2d 961, 964 (La.1991). Any regular employee in the classified service who feels that he has been disciplined without just cause may demand a hearing and investigation by the Board to determine the reasonableness of the action. LSA-R.S. 33:2501(A). After such a hearing and investigation, the Board may, if the evidence is conclusive, affirm the Raction of the appointing authority. LSA-R.S. 33:2501(0(1); Landry v. Baton Rouge Police Dept., 08-2289 (La.App. 1st Cir.5/8/09), 17 So.3d 991, 994-95. If it finds that the action was not taken in good faith for cause, the Board shall order the immediate reinstatement or reemployment of such person. LSA-R.S. 33:2501(0(1). The Board may modify the order of removal, suspension, demotion, discharge, or other disciplinary action by directing a suspension without pay, for a given period, a reduction in pay to the rate prevailing for the next lower class, a reduction or demotion to a position of any lower class and to the rate of pay prevailing thereof, or such other lesser punitive action that may be appropriate under the circumstances. LSA-R.S. 33:2501(0(1).
Upon the Board’s filing of the complete transcript of its hearing with the district court, the court shall proceed to hear the appeal. See LSA-R.S. 33:2501(E)(2). This hearing is confined to the determination of whether the decision made by the Board was made in good faith for cause under the provisions of LSA-R.S. 33:2471-2508. LSA-R.S. 33:2501(E)(3). The district court’s review of the Board’s quasi-judicial administrative decision is an exercise of appellate jurisdiction. Jordan v. City of Baton Rouge, 93-2125 (La.App. 1st Cir.3/10/95), 652 So.2d 701, 703. Review by the district court does not include a trial de novo. McCoy v. City of Shreveport, 42,662 (La.App. 2nd Cir.12/5/07), 972 So.2d 1178, 1182. The *893 district court may not substitute its opinion for that of the Board. The district court should accord deference to a civil service board’s factual conclusions and must not overturn them unless they are manifestly erroneous. Moore v. Ware, 01-3341 (La.2/25/03), 839 So.2d 940, 946; St. Tammany Parish Fire Protection Dist. No. 4 v. Picone, 10-0481 (La.App. 1st Cir.12/15/10), 53 So.3d 704, 706. Likewise, the intermediate appellate court’s and supreme court’s review of a civil service board’s findings of fact are limited. Those findings are entitled to the same weight as findings of fact made by a trial court and are not to be overturned in the absence of manifest error. Moore, 839 So.2d at 946.
DISCUSSION
Where state law provides that an employee is a member of the classified civil service and can only be disciplined for cause, the employee possesses a property right 17in continued employment and cannot be deprived of this right except pursuant to constitutionally adequate procedures. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 539-41, 105 S.Ct. 1487, 1491-93, 84 L.Ed.2d 494 (1985). The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer’s evidence, and an opportunity to present his side of the story. Loudermill, 470 U.S. at 546, 105 S.Ct. at 1495. All the process that is due is provided by a pre-termination opportunity to respond, coupled with post-termination administrative procedures. Loudermill, 470 U.S. at 547-48, 105 S.Ct. at 1496; Baton Rouge Police Dept. v. Morrison, 04-0057 (La.App. 1st Cir.2/18/05), 906 So.2d 610, 615.
In his first assignment of error, Beck contends that LSA-R.S. 33:2500(D) requires that a detailed explanation for the disciplinary action must be provided to the employee by the appointing authority before the termination. We do not find any such temporal requirement in the statute. Louisiana Revised Statute 33:2500(D) states that in every case of corrective or disciplinary action taken against a regular employee of the classified service, the appointing authority shall furnish the employee and the Board a statement in writing of the action and the complete reasons for it. Since there is no mention in the statute of when the written statement and reasons concerning the disciplinary action are to be given, we look to the constitutional due process guidelines to determine whether the notice was adequate. The question is whether the procedure used provided “such procedural protections as the particular situation demands.” See Gilbert v. Homar, 520 U.S. 924, 930, 117 S.Ct. 1807, 1812, 138 L.Ed.2d 120 (1997). After the charges were first received by Chief Knaps in November 2007, Beck was placed on administrative leave with pay while an investigation could be conducted. The termination letter sent to Beck by Chief Knaps on December 4, 2007, made reference to the fact that a pre-termination Loudermill hearing with Beck had already occurred, after which the demotion decision had been made.[5] The demotion was to be effective December 10, 2007.
IsThe Board’s written findings and the audio recording of the evidentiary hearing at his appeal before the Board reveals that Beck was fully aware of the reasons for his demotion, since he called witnesses to support his case and testified on his own behalf concerning the complaints that had been made against him. He was represented by an attorney at this hearing and *894 was able to cross-examine the witnesses against him. In this situation, we conclude, as did the district court, that the constitutional requirements were fully met in this case by the pre-termination notice and opportunity to be heard at the Loud-ermill hearing, along with the post-termination appeal process to the Board.
The district court reviewed the full record of the evidentiary hearing and found insufficient grounds for two of the Board’s reasons for affirming Beck’s demotion. However, it found that two of the Board’s reasons were supported by the evidence and that the Board’s decision concerning those matters was made in good faith and for cause. Beck assigns as error the district court’s findings concerning those two matters, namely, his travel to Alexandria while out on sick leave and his attempts to have another officer excused from military drill without that officer’s knowledge and consent. Initially, Beck obtained permission to travel to Alexandria to visit with a terminally ill relative. On the way back, he stopped at a motorcycle shop and bought a motorcycle. Beck did not have permission to make this stop, which deviated from the stated purpose of his travel. Sometime later, he and another officer drove back to Alexandria to pick up the motorcycle. Beck did not have permission to leave home for this trip. Both officers admitted that Beck was on extended sick leave at the time and was required to remain at home during regular working hours. Beck argues that the record does not reveal the time that this trip was made; therefore, the evidence was insufficient to show that he was away from home during regular working hours. However, the officer who traveled with him testified that they returned to Beck’s home in the evening. Given this fact and the admissions of both officers that they knew the trip violated the sick leave policy, the court did not err in concluding that the trip was made during regular working hours while the motorcycle shop was open for business. This trip was .a knowing violation of the rules and constituted just cause for discipline.
| flWith regard to the contacts made to Officer Jenkins’ military superior officer to have him excused from drill, the record shows that Beck made such calls on at least two occasions without first speaking to Jenkins about it. These contacts gave Officer Jenkins’ military superior the impression that he was trying to avoid his military duty, particularly since one of Beck’s calls involved a very important drill in which Jenkins’ unit had a major role. These calls showed a lack of respect for Officer Jenkins, since he was not given the opportunity to discuss his military duties with Beck before the calls were made. However, Officer Jenkins testified that these calls did not have any apparent effect on his standing in the military reserve.
We agree with the district court’s conclusions on these issues. In deciding whether to affirm the Board’s factual findings, a reviewing court should apply the clearly wrong or manifest error rule prescribed generally for appellate review. Moore, 889 So.2d at 946; Landry, 17 So.Sd at 995. Having applied that standard, we note that there is evidence to support the district court’s conclusions concerning the two incidents for which it determined the Board had acted in good faith and for just cause, and the record as a whole does not indicate that the Board’s factual findings were clearly wrong. See Stobart v. State Through the Dep’t of Transp. & Dev., 617 So.2d 880, 882 (La.1993). Accordingly, we must give deference to both the district court’s conclusions and the Board’s findings on these issues.
However, Beck also contends that, given the fact that the district court found *895 there was no just cause for two of the four violations on which the Board based its decision, the three-grade demotion imposed on him was arbitrary and capricious. The sole issue before the district court was whether the Board acted in good faith and for cause. See LSA-R.S. 33:2501(E)(3). As we previously noted, good faith does not exist if the appointing authority acted arbitrarily or capriciously, or as the result of prejudice or political expediency. See Moore, 839 So.2d at 945-46. Arbitrary or capricious means the lack of a rational basis for the action taken. Id.; Landry, 17 So.3d at 995.
In this case, the district court concluded from its review of the evidence before the Board that there was no rational basis for the Board’s factual findings concerning | intwo of the incidents on which the disciplinary action was based. The facts of this case appear to be unique, in that our review of the jurisprudence has not revealed a similar situation where disciplinary actions are imposed on the basis of multiple violations, some of which are later determined by the reviewing court to have been imposed without cause. We conclude that when the reviewing court determines that legal cause for the disciplinary action has not been established with reference to some of the charges, a disciplinary action that may have been reasonable when imposed may become arbitrary or capricious, given the lesser number and severity of the infractions for which legal cause was found.
We find that to be the case in the matter of Beck’s demotion. He had over thirty years of service with the Department when the charges were brought. Much of the testimony against him included irrelevant incidents that had occurred years earlier and for which he had already been counseled. Ultimately, the only violations that remained after the district court’s ruling were the unauthorized trip to Alexandria to pick up a motorcycle while on extended sick leave and the conversations with Officer Jenkins’ military supervisor, attempting to have him released from drills so that he would be available for service to the Department. Under these circumstances, we conclude that the three-grade demotion from Captain to Probationary Patrolman First Class may not be commensurate with the violations found by the Board, as modified by the district court. Therefore, this case will be remanded to the district court with orders to further remand it to the Board for consideration of a modification of the demotion that may be appropriate under these circumstances. See LSA-R.S. 33:2501(0(1).
CONCLUSION
Based on the foregoing, we convert this appeal to an application for a supervisory writ, deny the writ with reference to the procedural due process concerns and the finding of legal cause for two violations, grant the writ with reference to the issue of a possible arbitrary or capricious disciplinary action imposed in this case, and remand the case to the district court, with instructions to remand it to the Board for further proceedings in accordance with this opinion. Costs of this appeal, in the amount | T1of $1,008.50, are assessed to the City of Baker.
APPEAL CONVERTED TO WRIT; WRIT DENIED IN PART AND GRANTED IN PART; REMANDED TO THE DISTRICT COURT WITH INSTRUCTIONS.
GAIDRY, J., concurs.
HIGGINBOTHAM, J„ concurs.

. In Miazza v. City of Mandeville, 10-0304 (La.5/21/10), 34 So.3d 849, the Louisiana Supreme Court stated that when, as in this case, the legislature has vested appellate jurisdiction in the district court, the court of appeal lacks appellate jurisdiction, and should convert the appeal to an application for supervisory writs. The supreme court gave a similar direction to this court in Meiners v. St. Tammany Fire Protection Dist. # 4 Bd. of Com’rs, 10-0912 (La.6/25/10), 38 So.3d 359. Since these cases, this court has followed this procedure in several other cases, including Dwyer v. West Feliciana Fire Protection Dist. No. 1 Civil Service Bd., 11-1096 (La.App. 1st Cir. 12/21/11), 80 So.3d 1229; McGee v. St. Tammany Parish Fire Protection Dist. No. 1, 10-1894 (La.App. 1st Cir.5/6/11) (unpublished); and Baton Rouge Police Dept. v. O’Malley, 10-1386 (La.App. 1st Cir.3/25/11), 64 So.3d 773.

. In Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545-46, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985), the United States Supreme Court concluded that a public employee dismissible only for cause is generally entitled to at least a limited hearing prior to his termination in order to satisfy procedural due process and to provide the employee with an opportunity to tell his side of the story, to be followed by a more comprehensive post-termination hearing. In Gilbert v. Homar, 520 U.S. 924, 930, 117 S.Ct. 1807, 1812, 138 L.Ed.2d 120 (1997), the Supreme Court clarified its Loudermill holding by observing that due process is not a fixed technical concept, but rather a flexible concept providing "such procedural protections as the particular situation demands.”

. Louisiana Revised Statute 33:2501(A) states:
Any regular employee in the classified service who feels that he has been discharged or subjected to any corrective or disciplinary action without just cause, may, within fifteen days after the action, demand, in writing, a hearing and investigation by the board to determine the reasonableness of the action. The board shall grant the employee a hearing and investigation within thirty days after receipt of the written request.

. Louisiana Revised Statute 33:2501(E)(1) states:
Any employee under classified service and any appointing authority may appeal from any decision of the board, or from any action taken by the board under the provisions of the Part that is prejudicial to the employee or appointing authority. This appeal shall lie direct to the court of original and unlimited jurisdiction in civil suits of the parish wherein the board is domiciled.

. There is no transcript or other summary of that hearing in the record, nor is one required under the applicable statutes setting out the processes to be used.